January Term, 1862.

State of Wisconsin v. Throup.

---

STATE OF WISCONSIN VS. THROUP, impleaded, &c.

A mortgagor conveyed the *south* half of the mortgaged premises by a warranty deed, stating therein that the same was subject to a prior mortgage which he (the grantor) agreed to pay when it became due; and after the deed was recorded, conveyed the *north* half of the mortgaged premises to another person, " subject to one half" of said mortgage. *Held,* that the *north* half of the lot should first be sold to satisfy the mortgage debt.

APPEAL from the Circuit Court for *Racine* County.

This was an action to foreclose a mortgage given by one Parker to the State of Wisconsin, June 5, 1849, upon lot 6 in block 15, in the city of Racine. On the trial, it appeared that on the 28th of October, 1854, Parker conveyed to one Case the *south* half of the lot, by a warranty deed containing the following clause: "subject however to a certain mortgage of four hundred dollars, executed to Anson Bigelow * * which the party of the second part hereby agrees to pay, when it shall become due, the amount thereof

being deducted from the purchase money; subject also to a certain mortgage to the State of Wisconsin, which the party of the first part agrees to pay according to the terms thereof." The title to the south half of the lot afterwards came to the defendant *Throup* by sundry mesne conveyances. On the 21st of May, 1855, Parker conveyed the north half of said lot to one Hentig, by a warranty deed containing the following clause: "Said lot is deeded subject to one half of a mortgage executed to the state, which is about sixty one dollars." The defendant *Hannah Cribb* became the owner of the north half of the lot in October, 1860, and in March, 1861, paid to the state treasurer $83.39, and took a receipt stating that she wished it to be applied on the north half of the lot.—All the conveyances were recorded on or about the day of their several dates. The only question involved was, which part of the mortgaged premises, the south half or the north half, should first be sold to pay the plaintiff's mortgage. The circuit court held that the south half of the lot should be first sold for that purpose, and rendered judgment accordingly. *Throup* appealed.

*Strong & Fuller*, for appellant, cited 8 Paige R., 277; 6 id., 521, 35; 2 id., 300; 1 id., 228; 9 id., 183; 9 Wis., 46; 1 John. Ch., 447; 5 id., 235; 9 Cow., 403.

*C. E. Dyer*, contra, contended that where a part of mortgaged premises is conveyed by the mortgagor subject to the payment of the whole mortgage, that part, as between the vendor and the vendee, constitutes the primary fund for its payment (2 Hill. on Mort., chap. 34, secs. 90, 91); and that the true construction of the deed from Parker to Case, of the south half of the lot in question, was that put upon it by the circuit court, viz., that the conveyance was subject to the mortgage held by the state, and the words "which the party of the first part assumes and agrees to pay" were inserted to protect the grantee against any deficiency on a mortgage sale. The opposite construction makes the words "subject to a certain mortgage to the state of Wisconsin" meaningless; and such a construction should not be adopted without necessity. 2 Parsons on Con., 15, 16; 3 Cow., 284; 16 Pick., 227. 2. It is only where the prior conveyance of a portion of

January Term, 1862.

STATE OF WISCONSIN v. THROUP.

the mortgaged premises is a full warranty deed, that the rule requiring a sale in the inverse order of alienation, to make the mortgage debt, should be applied. Such were the cases in 1 Johns. Ch. R., 447; 5 id., 235; 9 Wis., 46.

May 15.        *By the Court,* PAINE, J. This was an action to foreclose a mortgage, and the only question presented on this appeal arises between two defendants, as to which is entitled to have his portion of the mortgaged premises reserved until the other shall be first sold. Parker, the original grantee from the state, first conveyed the south half of the lot, which now belongs to the appellant *Throup.* In that conveyance it was provided, that it should be subject to a certain mortgage of four hundred dollars, which the grantee, Case, assumed and agreed to pay, " and subject also to a certain mortgage to the State of Wisconsin, which the said party of the first part assumes and agrees to pay according to the terms thereof." Parker afterwards conveyed the north half, subject to one half of this mortgage to the state, and the defendant *Hannah Cribb,* who now owns this north half, paid to the state one half the sum due on this mortgage, before the suit was commenced. The question now is, which half should be first sold to satisfy the balance due on the mortgage. The general rule is conceded, that where the mortgaged premises have been subsequently conveyed by the mortgagor, they are to be sold in the inverse order of alienation, and this undoubtedly settles the question, unless the provision in the first conveyance in regard to this mortgage takes it out of the rule. That provision was, that the deed was made, "subject" to this mortgage, which, however, Parker, the grantor, "*assumed and agreed to pay according to the terms thereof.*" There is no doubt, as contended by the counsel for the defendant *Cribb,* that if the south half had been first sold subject to this mortgage, and afterwards the north half sold subject to half the mortgage, and that half had been paid; that as between the two owners of the equity of redemption, the south half, though first alienated, should be first sold. But we cannot place the same construction on the language of the first deed which seems to have been given to it by the

court below.  It must be conceded that the language is in-
accurate, and that the first part of the clause relating to this
mortgage is repugnant to the last part.   The first part de-
clares the conveyance to be subject to this mortgage, but the
last part provides that the grantor, Parker, was to pay it.   If
that was so, of course the conveyance was not subject to it,
in the proper sense of that term.   And it seems clear that
the mere use of that word cannot be held to control or qual-
ify the positive, explicit provision that the grantor was to
pay off the mortgage.

The meaning of it, as a whole, being unmistakable, it is
perhaps unnecessary to attempt to account for such a use of
language, but it may possibly be explained in this way.
There was another mortgage on the premises, subject to
which the conveyance was made, and the grantee assumed
it.   This had just been provided for in the deed, and prob-
ably for the purpose of showing clearly that the grantee was
not to pay this mortgage to the state, the conveyancer deemed
it proper to insert something to that effect in the deed, and
in doing it, very clumsily referred to this in the same lan-
guage he had used to refer to the other, not perceiving the
repugnancy between the word "subject" and the plain mean-
ing of the provision that the grantor was to pay it.

This leaves it as though nothing had been said in the first
deed in regard to this mortgage, so that as between Parker
and any owner of the south half, holding under the first
deed, the north half, if it was still owned by Parker, should
be first sold upon this mortgage.   And however Parker
might bind himself to any subsequent grantees of the north
half, it is clear that he could not give them any better right
than he himself had, with respect to the equitable rights of
his first grantee.

That part of the judgment which directs the south half
of the lot to be first sold, is reversed, with costs in favor of
the appellant *Throup* against the defendant *Cribb*, and the
judgment is modified by providing that the north half shall
be first sold, and the cause remanded to be enforced accord-
ingly.